UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

———————————————————————

CHRISTOPHER BANCHS,

       Plaintiff,

  v.                                        19-CV-555-LJV
                                                ORDER
SERGEANT NOWORYTA, *et al.*,

       Defendants.

———————————————————————

## INTRODUCTION

The *pro se* plaintiff, Christopher Banchs, is a prisoner currently confined at the Marcy Correctional Facility. *See* Docket Item 20. In 2019, he filed this action asserting claims under 42 U.S.C. § 1983 in connection with an incident that allegedly occurred at the Wyoming Correctional Facility ("Wyoming"). *See* Docket Item 1.

Earlier this year, this Court granted Banchs's motion to proceed *in forma pauperis* and screened the complaint under 28 U.S.C. §§ 1915(e)(2)(B) and 1915A. Docket Item 16. Because the events alleged in the complaint occurred more than five years before Banchs commenced this action, the Court concluded that the complaint might well be time barred under the applicable statute of limitations. *Id.* In light of Banchs's *pro se* status, however, the Court gave him a chance to file a memorandum of law showing why his claims were not barred or to file an amended complaint with timely claims. *Id.* at 1, 7-9.

Banchs did not file a memorandum of law showing the timeliness of his claims, but on March 30, 2021, he filed an amended complaint, Docket Item 20, with a signed

and notarized addendum that appears to address the delinquent commencement of this lawsuit, *id.* at 8.  Nevertheless, the amended complaint is dismissed with prejudice because Banchs's claims are barred under the applicable statute of limitations and because the doctrine of equitable tolling does not save those claims.

## DISCUSSION

I.    THE AMENDED COMPLAINT

In evaluating the amended complaint, this Court accepts all factual allegations as true and draws all inferences in Banchs's favor.  See *Larkin v. Savage*, 318 F.3d 138, 139 (2d Cir. 2003) (per curiam); *King v. Simpson*, 189 F.3d 284, 287 (2d Cir. 1999). "Specific facts are not necessary," and the plaintiff "need only 'give the defendant fair notice of what the . . . claim is and the grounds upon which it rests.'" *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (alteration in original) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also Boykin v. Keycorp*, 521 F.3d 202, 213 (2d Cir. 2008) ("[E]ven after *Twombly*, dismissal of a *pro se* claim as insufficiently pleaded is appropriate only in the most unsustainable of cases."). Although "a court is obliged to construe [*pro se*] pleadings liberally, particularly when they allege civil rights violations," *McEachin v. McGuinnis,* 357 F.3d 197, 200 (2d Cir. 2004), even pleadings submitted *pro se* must meet the notice requirements of Rule 8 of the Federal Rules of Civil Procedure, *see Wynder v. McMahon*, 360 F.3d 73, 76 (2d Cir. 2004).

Banchs has sued "Sergeant Noworyta," "Correction Officer [("CO")] T. Henderson," CO "J. Krafe," "Fire Safety Officer John Doe," and "Grievance Coordinator John Doe."  Docket Item 20 at 1-2.  He alleges that in January 2014, the defendants used excessive force against him and filed false or inaccurate misbehavior reports

against him as well.  *Id.* at 5.   The complaint included, and the amended complaint attached, an additional page of allegations that is largely illegible but that appears to plead conclusory claims of religious "prejudice" and equal protection violations in connection with the excessive force incident and the failure to photograph and document Banchs's injuries after the incident.[1]  *See* Docket Item 1 at 7; Docket Item 20 at 190.

A liberal reading of the amended complaint tells the following story.  On January 2, 2014, CO Krafe "harassively [sic] professed threats [and] reported inaccurate false statements on [a] disciplinary misbehavior report ticket."  *Id.* at 5, 221 (copy of misbehavior report dated January 2, 2014).  Two days later, on January 4, 2014, CO Henderson "shoved" Banchs's head into a fire extinguisher on a wall in the hallway leading to the entrance of the dormitory.  *Id.* at 5.  Banchs suffered a cut to his "right eyebrow socket" that required three sutures, and he was treated for his injury at an outside hospital.  *Id.*

Sergeant Noworyta did not accurately document the "harmful misconduct," and the photographs of Banchs's injuries were "blurry" and "untimely produced."  *Id.*

---

[1] The additional page of allegations was attached to the original complaint, Docket Item 1 at 7, and both are attached to the amended complaint, *see* Docket Item 20 at 184-234.  Indeed, Banchs attached over 200 pages of documents as exhibits to the amended complaint.  Many are unrelated to the allegations, while others are arguably relevant to a claim of equitable tolling of the statute of limitations.  For example, there are scores of documents related to Banchs's prior criminal proceedings and convictions, his prior disciplinary infractions, and his infractions that post-date the misconduct alleged in the amended complaint.  The attachments also include records related to Banchs's mental health at various times during his incarceration. This Court deems the exhibits to the amended complaint to be part of the pleading and considers them in this screening decision.  *See Diaz v. Naomi, M.*, 2020 WL 2839334, at *2 n.2 (W.D.N.Y. June 1, 2020) (citing *Cooper v. Dennison*, 2011 WL 1118685, at *1 (W.D.N.Y. Mar. 24, 2011)).

Thirteen days after the incident, Banchs still suffered from facial swelling and bruising. *Id.* To this day, he has a permanent scar and suffers from "blurred" and permanently impaired vision, which requires eyeglasses. *Id.*

In the sworn addendum, Banchs appears to address the statute of limitations issue and raise the issue of equitable tolling. *Id.* at 8. In it, he points to "new" documents that he argues show that he suffered "somber explanations" and "overall devastating . . . chaotic setbacks repetitively endured[,] which . . . caused [him] to unpunctually expedite [this] lawsuit way just beyond 3 years time frame deadline allotment [sic]." *Id.* He also appears to complain about "librarian clerks at this detained psychiatric institution . . . containing . . . malicious racist miserable bias administrators . . . who manage . . . and . . . distribute photocopy services usually vindictively . . . also discarding [as] trash prisoners litigation sheets [and] duplicates [sic]." *Id.* Lastly, he apologizes for his poor penmanship, noting that he has a 75% loss of vision. *Id.*

## II.  SECTION 1983 CLAIMS AND THE STATUTE OF LIMITATIONS

In New York State, the statute of limitations for actions brought under 42 U.S.C. § 1983 is the three-year period in New York Civil Practice Law and Rules ("NY CPLR") § 214(2). *See Owens v. Okure*, 488 U.S. 235, 249-50 (1989) (holding that "where state law provides multiple statutes of limitations for personal injury actions, courts considering § 1983 claims should borrow the general or residual statute for personal injury actions"); *Jewell v. County of Nassau*, 917 F.2d 738, 740 (2d Cir. 1990) (noting that the Second Circuit has held that NY CPLR § 214(2) governs section 1983 actions brought in federal district courts in New York). In addition, federal courts are required to borrow the relevant state's rules for tolling the statute of limitations unless those rules

are inconsistent with federal law.  *See Bd. of Regents of Univ. of State of N.Y. v. Tomanio*, 446 U.S. 478, 487-91 (1980) (holding that New York's rules for tolling the statute of limitations applied).

Banchs filed his complaint on April 29, 2019, and both it and the amended complaint relate to the same events that occurred on January 2, and 4, 2014.  *See* Docket Items 1, 20.  This action therefore was commenced more than two years after the three-year limitations period expired in or very shortly after January 2017.  And Banchs has not offered a memorandum of law explaining why the limitations period should be tolled.

Liberally and generously construed, however, the amended complaint and attached documents might suggest that this Court should equitably toll the statute of limitations.  And courts should construe *pro se* pleadings to raise the strongest arguments they suggest.  *See Triestman v. Fed. Bur. of Prisons*, 470 F.3d 471, 474 (2d Cir. 2006).  Therefore, this Court reviews that implicit suggestion, as well as the facts included in the amended complaint and its attachments, to determine whether there might be some plausible reason to toll the limitations period.

Although the doctrine of equitable tolling applies to section 1983 actions, *Covington v. N.Y.C. Police Dep't.*, 471 F. App'x 28, 29 (2d Cir. 2012) (summary order), it is appropriate only "in rare and exceptional circumstances in which a party is prevented in some extraordinary way from exercising his rights," *Zerilli–Edelglass v. N.Y. Transit Auth.*, 333 F.3d 74, 80 (2d Cir. 2003) (internal quotations and citations omitted).

> When determining whether equitable tolling is applicable, a district court must consider whether the person seeking application of the equitable tolling doctrine (1) has acted with reasonable diligence during the time

5

> period she seeks to have tolled, and (2) has proved that the circumstances
> are so extraordinary that the doctrine should apply.

*Id.* at 80-81 (internal quotations and citation omitted).  A plaintiff also must "demonstrate a causal relationship between the extraordinary circumstances on which the claim for equitable tolling rests and the lateness of his filing, a demonstration that cannot be made if the [plaintiff], acting with reasonable diligence, could have filed on time notwithstanding the extraordinary circumstances." *Rivera v. United States*, 448 F. App'x 145, 146 (2d Cir. 2011) (citations omitted) (summary order); *see generally Gonzalez v. Rikers Island Warden*, 2016 WL 8711444, at *3 n.8 (E.D.N.Y. Aug. 24, 2016) (noting that the equitable tolling standard applied to cases under section 1983 is the same as the standard applied to *habeas corpus* cases.)

Banchs has not established either of those prongs.  He has not shown that he acted with reasonable diligence during the period he seeks to toll, nor has he shown extraordinary circumstances that prevented him from timely commencing this action.

To start, his allegations that he suffered "chaotic setbacks" and "devastatingly circumstantial discrepancies," Docket Item 20 at 8, are conclusory and fail to establish that he was "prevented in some extraordinary way from exercising his rights," *Zerelli–Edelglass*, 333 F.3d at 80 (internal quotations and citations omitted).  Certainly, some of the documents attached to the amended complaint document a history of mental illness, which may be a reason to toll the statute of limitations in New York.  *See* NY CPLR § 208.  But even read liberally, they do not lead to the conclusion that Banchs's mental

issues prevented him from filing this action for a full five years after the claims ensued in 2014.[2]  Docket Item 20 at 78-96.

      While mental illness may "justify equitable tolling in some circumstances, . . . the litigant . . . bears the burden of demonstrating that it is appropriate in his specific case." *Ganley v. City of New York*, 734 F. App'x 784, 786 (2d Cir. 2018) (summary order) (citing *Bolarinwa v. Williams*, 593 F.3d 226, 232 (2d Cir. 2010).  For equitable tolling to apply, the plaintiff must set forth a "particularized description of how [his] condition adversely affected [his] capacity to function generally or in relationship to the pursuit of [his] rights."  *Bolarinwa*, 593 F.3d at 232 (quoting *Boos v. Runyon*, 201 F.3d 178, 185 (2d Cir. 2000)).  Here, Banchs has not done that.  Indeed, the medical records attached to the amended complaint, even construed liberally in the context of tolling for mental illness, "do not provide details about the onset of his condition or how it prevented him from pursing his claims."  *Ganley*, 734 F. App'x at 786; *see also Boos*, 201 F.3d at 185 (denying equitable tolling and rejecting the plaintiff's "conclusory and vague claim, without a particularized description of how her condition adversely affected her capacity to function generally or in relationship to the pursuit of her rights").

      What is more, Banchs offers no reason to believe that his mental capabilities are better now than they were a year ago, or three years ago, or five years ago.  In other

---

      [2] In 2019, Banchs was classified as a Level 1 "Treatment Needs/Service Level," with a "diagnosed . . . serious mental illness or significant behavioral disorder with less than 6 months of psychiatric stability . . . ."  Docket Item 20 at 78 (Central New York Psychiatric Center assessment, dated December 9, 2019).  More recent records indicate that he suffers from "unspecified schizophrenia spectrum and other psychotic disorder."  *Id.* at 95-96 (psychiatric progress note, dated April 14, 2020).  But there is no indication that he suffered from mental illness from which he has now recovered or that his illness was so much worse in the past that he could not then have commenced an action that he now can commence.

words, he offers nothing to show why he brought the action in 2019 instead of 2017 or 2014. And so he has not shown that he was "prevented in some extraordinary way from exercising his rights." *See Zerilli–Edelglass*, 333 F.3d at 80.

And even if Banchs's mental illness were an "extraordinary circumstance," he has not demonstrated that he acted with reasonable diligence. In the two-hundred-plus pages of documents attached to the amended complaint, the only documentation of reasonable diligence that the Court can locate are a few requests Banchs made of correctional facilities in 2014 and 2017. Docket Item 20 at 196, 212-13, 218 (requesting copies of medical records and injury reports related to the events of January 2014). In 2014, Banchs was told by the Upstate Correctional Facility ("Upstate") that the requested records were unavailable. *Id.* at 196. In 2017, he was told that there was no Unusual Incident Report but that there were two Tier II misbehavior reports in the time frame of the events alleged. *Id.* at 213 (explaining that the "hearing packets would be located in [his] legal file at [his] current facility"). He did nothing to commence this suit after both of those responses.

Later in 2017, Banchs made two formal requests for records under New York's Freedom of Information Law. *See id.* at 218, 220. The response to the first request noted that the records were not at Upstate and that Banchs needed to contact Wyoming, where the incident occurred. *Id.* at 218. The response to the second request, which was for the Tier II hearing tape regarding the January 4, 2014 incident, stated that the tape had been provided to the Inmate Records Coordinator to be placed in Banchs's personal property. *Id.* at 220. Again, Banchs did nothing toward starting a federal lawsuit after receiving those responses.

8

That handful of attempts over the course of five years does not show reasonable diligence during the period of time Banchs seeks to toll.  What is more, some of the documents and records he requested, including the photographs of his injury he claims are blurry, appear to have been in his possession in 2017, near or around when the requests were made.  *Id.* at 219 (photographs), 221-222 (inmate misbehavior reports, dated January 2, and 4, 2014).  Banchs provides no reason why he needed those records to commence this action in a timely manner, much less why, while in possession of the documents in or around 2017, he waited until 2019 to file his complaint.

And perhaps most to the point, Banchs's offers no reason why he was able to request records in connection with the incident at issue but not to commence a lawsuit.  In other words, if he had the capacity to formally request records, how could any mental issues have prevented him from pursuing his claim?  Indeed, on February 2, 2014, Banchs filed a sworn notice of intention to file a claim with the New York State Court of Claims related to the same excessive force allegations at issue here.  *Id.* at 191-193.  If he then could do that in the Court of Claims, why could he not have pursued this action in federal court?

In sum, even after giving Banchs every benefit of the doubt and searching the record to find reasons to equitably toll the statute of limitations, this Court finds no good excuse for his failure to timely commence his claim.  Therefore, this action is time barred and Banchs's case is dismissed.

## **CONCLUSION**

For the reasons stated above, the amended complaint is dismissed with prejudice under 28 U.S.C. § 1915(e)(2)(B) and 1915A(b).  Banchs is forewarned that his right to pursue further relief in federal court at public expense will be greatly curtailed if he has three actions or appeals—that is, two in addition to this one—dismissed under the provisions of 28 U.S.C. §§ 1915(e)(2)(B) and 1915A.  *See* 28 U.S.C. § 1915(g).

The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this order would not be taken in good faith and leave to appeal to the Court of Appeals as a poor person is denied.  *Coppedge v. United States*, 369 U.S. 438 (1962).  Further requests to proceed on appeal as a poor person should be directed, on motion, to the United States Court of Appeals for the Second Circuit, in accordance with Rule 24 of the Federal Rules of Appellate Procedure.

## **ORDER**

In light of the above, IT IS HEREBY

ORDERED that the amended complaint is dismissed with prejudice; and it is further

ORDERED that any appeal from this order would not be taken in good faith, and leave to appeal to the Court of Appeals *in forma pauperis* is denied, *Coppedge*, 369 U.S. (1962); and it is further

      ORDERED that the Clerk of the Court shall close this case.

      SO ORDERED.

Dated:     April 26, 2021
             Buffalo, New York

                                                    */s/ Lawrence J. Vilardo*
                                                    LAWRENCE J. VILARDO
                                                    UNITED STATES DISTRICT JUDGE